## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| KATHERINE FINGER,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ROGERS CORPORATION, KEITH L. BARNES, MEGAN FAUST, BRUCE D. HOECHNER, CAROL R. JENSEN, KEITH LARSON, GANESH MOORTHY, JEFFREY J. OWENS, HELENE SIMONET, and PETER C. WALLACE,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This action is brought by Plaintiff against Rogers Corporation ("Rogers" or the "Company") and the members of Rogers' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Rogers will be acquired by DuPont de Nemours, Inc. ("DuPont") through DuPont's subsidiary Cardinalis Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On November 2, 2021, Rogers issued a press release announcing that it had entered into an Agreement and Plan of Merger, dated November 1, 2021, to sell Rogers to DuPont (the "Merger Agreement").  Under the terms of the Merger Agreement, Rogers shareholders will receive $277.00 in cash for each share of Rogers common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $5.2 billion.

3.      On December 1, 2021, Rogers filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Rogers stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Rogers' financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Rogers stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Rogers' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Rogers maintains a manufacturing facility in Bear, Delaware, rendering venue in this District appropriate.

### THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Rogers.

9.      Defendant Rogers is a Massachusetts corporation, with its principal executive offices located at 2225 W. Chandler Blvd., Chandler, Arizona 85224.  Rogers designs, develops, manufactures, and sells high-performance and high-reliability engineered materials and components to meet the demanding challenges of its customers.  Rogers' shares trade on the New York Stock Exchange under the ticker symbol "ROG."

10.      Defendant Keith L. Barnes ("Barnes") has been a director of the Company since 2015.

11.      Defendant Megan Faust ("Faust") has been a director of the Company since December 2020.

12.      Defendant Bruce D. Hoechner ("Hoechner") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2011.

13.     Defendant Carol R. Jensen ("Jensen") has been a director of the Company since 2006.

14.     Defendant Keith Larson ("Larson") has been a director of the Company since December 2020.

15.     Defendant Ganesh Moorthy ("Moorthy") has been a director of the Company since 2013.

16.     Defendant Jeffrey J. Owens ("Owens") has been a director of the Company since 2017.

17.     Defendant Helene Simonet ("Simonet") has been a director of the Company since 2014.

18.     Defendant Peter C. Wallace ("Wallace") is Board Chair and has been a director of the Company since 2010.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     DuPont is a Delaware corporation, with its principal executive offices located at 974 Centre Road, Building 730, Wilmington, Delaware 19805.  DuPont is a global innovation leader with technology-based materials and solutions that help transform industries and everyday life.  Its employees apply diverse science and expertise to help customers advance their best ideas and deliver essential innovations in key markets including electronics, transportation, construction, water, healthcare and worker safety.  DuPont's worldwide operations are managed through global businesses, which are currently reported in five reportable segments: Electronics & Imaging; Nutrition & Biosciences; Transportation & Industrial; Safety & Construction; and Non-Core.  As

of December 31, 2020, DuPont had subsidiaries in about 60 countries worldwide and manufacturing operations in about 40 countries.  DuPont's shares trade on the New York Stock Exchange under the ticker symbol "DD."

21.    Merger Sub is a Delaware corporation and a wholly-owned subsidiary of DuPont.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.    Rogers is a global leader in engineered materials to power, protect and connect the world, delivering innovative solutions to help customers solve their toughest material challenges. The Company's advanced electronic and elastomeric materials are used in applications for electric and hybrid electric vehicles ("EV/HEV"), automotive safety and radar systems, mobile devices, renewable energy, wireless infrastructure, energy-efficient motor drives, industrial equipment and more.  The Company maintains manufacturing facilities in the United States, Asia and Europe, with sales offices worldwide.

23.    Rogers operates three strategic operating segments: Advanced Connectivity Solutions ("ACS"), Elastomeric Material Solutions ("EMS"), and Power Electronics Solutions ("PES").  The remaining operations, which represent non-core businesses, are reported in the Other operating segment.  The Company's ACS operating segment designs, develops, manufactures and sells circuit materials and solutions enabling high-performance and high-reliability connectivity for applications in wireless infrastructure (e.g., power amplifiers, antennas and small cells), automotive (e.g., ADAS, telematics and thermal solutions), aerospace and defense (e.g. antenna systems, communication systems and phased array radar systems), connected devices (e.g., mobile internet devices and thermal solutions) and wired infrastructure (e.g., computing and IP infrastructure) markets.  The EMS operating segment designs, develops, manufactures and sells

engineered material solutions for a wide variety of applications and markets. The PES operating segment designs, develops, manufactures and sells ceramic substrate materials, busbars and cooling solutions for a variety of applications in EV/HEV, general industrial, mass transit, renewable energy, aerospace and defense and wired infrastructure markets. The Other operating segment consists of elastomer components for applications in general industrial market, as well as elastomer floats for level sensing in fuel tanks, motors, and storage tanks applications in the general industrial and automotive markets.

24.     On November 2, 2021, the Company announced its third quarter 2021 financial results and business developments. Net sales were $238.3 million, a 1.4% increase versus the prior quarter from record sales in the EMS business unit, and also improved significantly from net sales of $201.9 million in the third quarter of 2020. Net income was $25.1 million, compared to $7.0 million in the third quarter of 2020. Diluted earnings per share for the quarter reached $1.33, as compared to $0.37 in the third quarter of 2020. Adjusted EBITDA was $54.2 million, compared to $47.9 million during the corresponding quarter of 2020. Reflecting on the results and looking to the future, defendant Hoechner stated:

> Rogers' strong position in the burgeoning EV/HEV markets was again evident in our third quarter results, despite some near-term supply chain challenges. The underlying, long-term strength of the EV/HEV and ADAS markets coupled with broad customer enthusiasm for our materials solutions bolsters the opportunity we see to double our revenues over the next five years.

**The Proposed Transaction**

25.     On November 2, 2021, Rogers issued a press release announcing the Proposed Transaction, which states, in relevant part:

> Chandler, Arizona, November 2, 2021: Rogers Corporation (NYSE:ROG) announced today that it has entered into a definitive merger agreement to be acquired by DuPont (NYSE: DD) in an all-cash transaction that values Rogers at approximately $5.2 billion.

The transaction delivers substantial value to Rogers' shareholders, who will receive $277 in cash per share, representing a 33% premium over Rogers' closing share price on November 1, 2021, and a 46% premium to the 1-month volume weighted average share price.

Following the closing of the transaction, Rogers will be integrated into DuPont's Electronics & Industrial business unit. Rogers significant applications engineering, design expertise, and deep customer relationships form a strong strategic fit with DuPont's innovation capabilities and collaborative approach to solving the most complex customer challenges.

"Rogers is a recognized global leader in advanced materials solutions, and this combination with DuPont will help accelerate our long-term growth in EV/HEV, ADAS and other key markets," stated Bruce D. Hoechner, Rogers' President and CEO. "The Rogers' team has created a growth-focused organization built on a foundation of strong technology leadership and customer intimacy. Our combination with DuPont, a proven leader in technology-based materials, provides resources and support to allow Rogers to scale for success. Rogers is a natural fit with DuPont, and this combination will create an exciting next chapter for Rogers' customers, employees and partners."

"Rogers is a results-driven organization with excellent technical expertise and deep customer relationships that align well with DuPont's leading innovation and applied material science capabilities," said Ed Breen, DuPont Executive Chairman and CEO. "The combination of Rogers with our Electronics & Industrial business further strengthens our market-leading portfolio and ability to bring new solutions to exciting end markets. We look forward to welcoming Rogers' employees and working together to deliver essential innovations that help our customers and company grow."

Transaction Details
The Board of Directors of Rogers has unanimously approved the agreement with DuPont and recommends that the Rogers' shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The transaction is expected to close in the second quarter of 2022, subject to customary closing conditions, including approval by Rogers' shareholders and receipt of regulatory approvals.

J.P. Morgan Securities LLC served as exclusive financial advisor to Rogers on the transaction; Covington & Burling LLP and Hinckley, Allen & Snyder LLP served as outside legal counsel.

**Insiders' Interests in the Proposed Transaction**

26.     Rogers insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Rogers.

27.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with DuPont.  Under the terms of the Merger Agreement, upon a termination in connection with the merger, all outstanding Company deferred stock units and certain restricted stock units will vest and convert into the right to receive the Merger Consideration.  The following table sets forth the cash payments that Rogers insiders will receive in connection with their common shares and equity awards upon closing of the merger:

| Director or Officer | Number of Shares of Common Stock[1][2][3][4] | Value of Shares of Common Stock | Number of Company Restricted Stock Unit Awards | Value of Company Restricted Stock Unit Awards | Number of Company Performance-Based Share Unit Awards | Value of Company Performance-Based Share Unit Awards | Number of Deferred Stock Units[5] | Value of Deferred Stock Units | Aggregate Value[6] |
|---|---|---|---|---|---|---|---|---|---|
| Barnes, Keith | 820 | $  227,140 | — | $  — | — | $  — | 800 | $221,600 | $  448,740 |
| Faust, Megan | 500 | $  138,500 | — | $  — | — | $  — | 800 | $221,600 | $  360,100 |
| Jensen, Carol | 12,138 | $ 3,362,226 | — | $  — | — | $  — | 2,850 | $789,450 | $ 4,151,676 |
| Larson, Keith | 500 | $  138,500 | — | $  — | — | $  — | 800 | $221,600 | $  360,100 |
| Moorthy, Ganesh | 9,900 | $ 2,742,300 | — | $  — | — | $  — | 800 | $221,600 | $ 2,963,900 |
| Owens, Jeffrey | 4,450 | $ 1,232,650 | — | $  — | — | $  — | 800 | $221,600 | $ 1,454,250 |
| Simonet, Helene | 9,100 | $ 2,520,700 | — | $  — | — | $  — | 800 | $221,600 | $ 2,742,300 |
| Wallace, Peter | 8,597 | $ 2,381,369 | — | $  — | — | $  — | 850 | $235,450 | $ 2,616,819 |
| Hoechner, Bruce | 134,840 | $37,350,680 | 12,877 | $3,566,929 | 30,624 | $8,482,848 | — | $  — | $49,400,457 |
| Mayampurath, Ramakumar | 1,591 | $  440,707 | 2,453 | $  679,481 | 2,652 | $  734,604 | — | $  — | $ 1,854,792 |
| Daigle, Robert C. | 10,589 | $ 2,933,153 | 2,781 | $  770,337 | 4,968 | $1,376,136 | — | $  — | $ 5,079,626 |
| Knoll, Jay B. | 11,743 | $ 3,252,811 | 2,981 | $  825,737 | 5,052 | $1,399,404 | — | $  — | $ 5,477,952 |
| Gouveia, Randall C. | 5,314 | $ 1,471,978 | 3,970 | $1,099,690 | 5,760 | $1,595,520 | — | $  — | $ 4,167,188 |

28.     Moreover, the Proxy Statement sets forth that at defendant Hoechner's discretion, non-named executive officers and other key Company employees are eligible to participate in the

Rogers Corporation Key Employee Retention Plan (the "KERP"). Benefits under the KERP include cash-based retention awards, which may be granted in an aggregate amount for all participants of up to $10 million.

29.    Further, if they are terminated in connection with the Proposed Transaction, Rogers' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[1][2][3] | Equity ($)[4] | Pension/ NQDC ($)[5] | Perquisites/ Benefits ($)[6] | Tax Reimbursement ($)[7] | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Hoechner, Bruce | $4,194,203 | $12,049,777 | $ 0 | $95,000 | $ 0 | $0 | $16,338,980 |
| Mayampurath, Ramakumar | $1,087,258 | $ 1,414,085 | $ 0 | $95,000 | $ 925,998 | $0 | $ 3,522,341 |
| Daigle, Robert C. | $1,363,476 | $ 2,146,473 | $990,400 | $95,000 | $ 0 | $0 | $ 4,595,349 |
| Knoll, Jay B. | $1,430,517 | $ 2,225,141 | $ 0 | $95,000 | $ 0 | $0 | $ 3,750,658 |
| Gouveia , Randall C. | $1,077,869 | $ 2,695,210 | $ 0 | $95,000 | $1,479,653 | $0 | $ 5,347,732 |

**The Proxy Statement Contains Material Misstatements and Omissions**

30.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Rogers' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

31.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor J.P. Morgan; and (ii) Company insiders' potential conflicts of interest. Accordingly, Rogers stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

**Material Omissions Concerning Rogers' Financial Projections and J.P. Morgan's Financial Analyses**

32.     The Proxy Statement fails to disclose material information concerning the Company's financial projections.

33.     For example, the Proxy Statement fails to disclose all line items underlying the calculation of: (i) Adjusted EBITDA; (ii) Free Cash Flow; and (iii) Unlevered Free Cash Flow.

34.     The Proxy Statement also fails to disclose material information concerning J.P. Morgan's financial analyses.

35.     The Proxy Statement also describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Rogers' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Rogers' stockholders.

36.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the companies analyzed; and (ii) the Company's CY2022E EBITDA and CY22E earnings per share, used by J.P. Morgan in the analysis.

37.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the transactions analyzed by J.P. Morgan; and (ii) the Company's LTM EBITDA as of September 30, 2021, used in the analysis.

38. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flow of the Company during the terminal year; (ii) quantification of the range of terminal asset values of the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.5%.

39. With respect to J.P. Morgan's *Analyst Price Targets for the Company* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed and the sources thereof; and (ii) quantification of the inputs and assumptions underlying the cost of equity of 10.5%.

40. The omission of this information renders the statements in the "Financial Forecasts" and "Opinion of Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Rogers insiders.

42. The Proxy Statement fails to disclose whether any of Rogers' executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between DuPont and Rogers' executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of DuPont's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

43. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders.

This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Certain Persons in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Rogers will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy

Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, J.P. Morgan's financial analyses, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## **COUNT II**

### **Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     The Individual Defendants acted as controlling persons of Rogers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Rogers, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Rogers stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Rogers, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Rogers stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 22, 2021

LONG LAW, LLC

By      */s/ Brian D. Long*
        Brian D. Long (#4347)
        3828 Kennett Pike, Suite 208
        Wilmington, DE 19807
        Telephone: (302) 729-9100
        Email: BDLong@longlawde.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*